UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

United States of America,

                Plaintiff,

    v.

$7,679.00 United States Currency,

                Defendant.

Report and Recommendation

13-CV-727A

---

United States of America,

                Plaintiff,

    v.

$15,104.00 United States Currency
  and One Blue 2011 Ford F150 XLT,
  VIN: 1FTEX1CM5BFB76077,

                Defendants.

Report and Recommendation

13-CV-1057A

---

**I.    INTRODUCTION**

    The Hon. Richard J. Arcara has referred both Case No. 13-CV-727 (the "First Case") and Case No. 13-CV-1057 (the "Second Case") to this Court under 28 U.S.C. § 636(b). (First Case Dkt. No. 7; Second Case Dkt. No. 11.) Pending before the Court is a motion to suppress filed in each case by *pro se* claimant Andrew Fitch ("Fitch"). (First Case Dkt. No. 80; Second Case Dkt. No. 71.) Fitch does not specify any source of legal authority for his motion, but the Court will construe his motion as one made under Rule G(8)(b) of the Supplemental Rules for Admiralty and Maritime Claims that accompany the Federal Rules of Civil Procedure ("FRCP Supp."). As he has

done an unfortunate number of times in these cases (*see, e.g.*, First Case Dkt. Nos. 35, 40, 42, 43, 46, 47, 57, 60, 62, 64, 70, 71), Fitch throws a stream-of-consciousness series of observations at the Court, covering bitter relationships that he has had with previously retained attorneys; threats that law enforcement agents allegedly made against him; attacks on counsel for plaintiff in this case and on certain state prosecutors; criticism of rulings against him in state court; and an assertion that any reasonable jury will vote for summary judgment in his favor.[1] Plaintiff responds by defending the points in these cases that might implicate suppression issues and by criticizing Fitch for repeatedly filing frivolous papers. Plaintiff also wants the Court to enjoin Fitch filing any more papers without advance permission, given the disorganized, repeated, and frivolous nature of his prior filings.

The Court will refer to the twin motions collectively as one motion and deems the motion submitted on papers under FRCP 78(b). The Court is not quite ready to go as far as to recommend an injunction against future filings by Fitch. Technically, Fitch had not filed any motions to suppress before. Despite the Court's explicit advice to consult the Pro Se Assistance Program (*see* First Case Dkt. No. 74 at 4, Dkt. No. 74-1; Second Case Dkt. No. 65 at 4, Dkt. No. 65-2), Fitch clearly has refused to do so. If Fitch does not wish to make a more useful argument for suppression then so be it. Meanwhile, the Court has attempted to extract some substance from what Fitch has filed. For the reasons below, the Court respectfully recommends denying the motion to suppress.

---

[1] This assertion, *inter alia*, ignores the Court's previous observation that neither side has yet demanded a jury trial. (First Case Dkt. No. 61 at 24; Second Case Dkt. No. 56 at 24.)

II. BACKGROUND

  A. *Initial Arrest*

Both cases originated with Fitch's arrest in Lockport, New York in the early morning of February 23, 2013. At about 12:40 AM, Fitch was the sole driver and occupant of the blue 2011 Ford F150 pickup truck (the "Vehicle") that is a named *in rem* defendant in the Second Case. Lockport Police Department officers pulled Fitch over when they allegedly observed him drive through a stop sign and turn without signaling. When officers approached Fitch at his driver-side window, they noticed an odor of marijuana coming from him and the Vehicle. The officers asked Fitch to exit the Vehicle and conducted a search of it. "A search of Fitch's vehicle resulted in the discovery of a clear glass jar containing marijuana; a plastic cup containing a black, hardened substance; a marijuana grinder, a clear plastic bag containing more than 2 ounces of marijuana, and 4 cellular phones." (Dkt. No. 38 at 6; Dkt. No. 54-1 at 2; Dkt. No. 54-7 at 2.)[2] The record does not clarify whether Fitch consented to a search or whether the officers decided immediately that they had probable cause to search the Vehicle; the record seems to indicate only that the decision to arrest came after the search. (Dkt. No. 54-7 at 2.)

No matter how events played out exactly, Fitch's encounter with officers on the night of February 23, 2013 ended with his arrest, a search of his person, and a search of the Vehicle. Officers charged him with misdemeanor possession of marijuana and two traffic violations. Officers found a total of $7,679.48 on Fitch's person—$679.48 in his wallet and $7,000 hidden inside the front of his pants. At his deposition, Fitch explained that he had money in the

---

[2] For the sake of brevity, the docket numbers cited in this Background section all refer to the First Case unless otherwise noted.

waistband of his pants because "[o]bviously any police officer whether you get pulled over with a gram of marijuana or not is going to assume that the funds came from that. So I just—I put it in there." (Dkt. No. 54-3 at 39.) A search of the Vehicle yielded a little over two ounces of marijuana in a clear plastic baggie, a clear glass jar containing marijuana, a plastic cup containing a black hardened substance, a marijuana grinder, and four cellular telephones. Fitch allegedly told officers during a post-arrest interview that the currency found on his person came from a settlement of a personal injury case.

On July 17, 2013, Fitch pled guilty to the marijuana charge and was sentenced to a conditional discharge. On March 3, 2016, the Government filed an addendum to the pending motion containing laboratory confirmation that the Vehicle contained marijuana and two other psychoactive controlled substances at the traffic stop and during the execution of the seizure warrant described below. (*See generally* Dkt. No. 58.)

### B. Federal Seizure Warrant and State Search Warrant

The next set of events in the present cases began in April and May 2013. On April 22, 2013, Magistrate Judge Leslie Foschio issued a seizure warrant for the Vehicle. Federal agents executed the warrant on May 21, 2013, stopping Fitch shortly after he started driving away from his residence. After searching the Vehicle, agents recovered $15,104.00 in currency, 4.43 ounces of marijuana, three more cellular telephones, and two cellular telephone phone batteries. "The defendant currency was found wrapped in plastic and secreted within a shoe box which was also located in the bed of the defendant vehicle, a short distance away from the marijuana. The majority of the defendant currency was found to be in smaller denominations, including 481

4

twenties." (Dkt. No. 54-1 at 5.) Also on May 21, 2013, local law enforcement officers executed a state search warrant for Fitch's residence in Barker, New York. (Dkt. No. 54-6 at 14–17.) "There officers recovered a quantity of marijuana, a glass baking pan containing concentrated cannabis oil, a small tin containing a white rock like substance and a purple chunk like substance, several assault rifles, ammunition and a ballistic vest. In the basement, officers discovered equipment they recognized as equipment commonly used in an indoor marijuana grow operation, including grow lights and plant food." (*Id.* at 5.) Another state search warrant appears to have been executed at Fitch's residence in Middleport, New York on November 3, 2015, yielding over 10 pounds of marijuana, drug paraphernalia, and over $70,000 cash. (Dkt. No. 54-7 at 12–15.) New state charges resulted; Fitch has disclosed in his motion papers that a trial on the charges was to have begun in state court on May 8, 2017.

### C. The Cases Generally

The Government filed verified complaints for the First Case on July 12, 2013 and for the Second Case on October 18, 2013. The Government's cause of action for the First Case was simple: "[T]here is cause to believe by a preponderance of the evidence that the defendant currency was furnished, or intended to be furnished in exchange for a controlled substance, and/or had otherwise been used to facilitate a violation of Title 21, United States Code, Subchapter I of Chapter 13, Section 801 *et. seq.* and is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6)." (First Case Dkt. No. 1 at 7.) Fitch filed a verified claim for the First Case on August 29, 2013 and a verified answer on September 19, 2013. (First Case Dkt. Nos. 6, 9.) In both documents, Fitch denied that the Government had an appropriate basis to make a

seizure and asserted that he was an innocent owner of the defendant currency. The Government's cause of action for the Second Case was nearly identical: "[T]here is cause to believe by a preponderance of the evidence that the defendant vehicle was used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance, and/or were the proceeds traceable to such exchanges in violation of Title 21, United States Code, Subchapter I of Chapter 13, Section 801 *et. seq.* and is subject to forfeiture pursuant to Title 21, United States Code, Sections 881 (a)(4) and (6). The defendant currency was furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, United States Code, Subchapter I of Chapter 13, Section 801 *et. seq.*, and is subject to forfeiture pursuant to Title 21, United States Code, Section 881 (a)(6)." (Second Case Dkt. No. 1 at 7–8.) In his verified claim and verified answer, both filed on November 20, 2013, Fitch again asserted himself as an innocent owner of the defendant assets and denied that the Government had an appropriate basis to seize the property. (*See generally* Second Case Dkt. Nos. 5, 6.)

Both cases have survived Fitch's motions to dismiss and have proceeded through discovery. Plaintiff has filed motions for summary judgment in each case. (First Case Dkt. No. 54; Second Case Dkt. No. 50.) The Court has recommended denial of the motions (First Case Dkt. No. 61; Second Case Dkt. No. 56), and objections remain pending.

### D. The Pending Motion

Fitch filed his motion to suppress on April 18, 2017. The motion begins with a discussion of arguments that Fitch apparently had with a prior attorney about obtaining certain records that

might document the source of the funds seized in these cases. (Dkt. No. 80 at 3.) The motion next appears to make the assertion that the Vehicle was paid for with the proceeds of a personal injury settlement and not in any illegitimate way that law enforcement agents might have suggested in the seizure warrant application. (*Id.* at 4.) The motion then asserts that agents used an excessive show of force when executing the federal seizure warrant and that Fitch was falsely accused of gun violations at the state level. (*Id.* at 5.) The motion appears to criticize the probable cause used as the basis for the 2015 state search warrant; the motion essentially challenges the inference that law enforcement agents made about his Middleport residence based on contraband found in the Vehicle. (*Id.* at 6–7.) The motion then veers into a discussion about how certain gun charges have been playing out against him in state court. (*Id.* at 7–9.) The motion makes a parenthetical reference to marijuana decriminalization in New York. (*Id.* at 10.) The motion concludes with a discussion of certain threats supposedly made against Fitch. (*Id.* at 11–12.)

Plaintiff opposes the motion in all respects. Plaintiff defends the two state warrants and the federal seizure warrant as supported by probable cause. (Dkt. No. 82 at 7–11.) Plaintiff argues that Fitch has not made enough of a showing that any of the warrants rested on false or misleading information. (*Id.* at 11–13.) Alternatively, plaintiff argues that the respective law enforcement agents or officers relied in good faith on the issues warrants. (*Id.* at 13–14.) Finally, plaintiff argues that collateral estoppel would bar review of suppression issues already litigated in state court, and that Fitch's repeated and frivolous filings requires the Court's attention. (*Id.* at 14–15.)

## III. DISCUSSION

### A. Motions to Suppress Generally

The Court begins with a brief review of the principles that govern motions to suppress in civil forfeiture cases. The availability of motions to suppress comes from Rule G of the Supplemental Admiralty and Maritime Rules. "If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence. Suppression does not affect forfeiture of the property based on independently derived evidence." FRCP Supp. G(8)(b). Because a forfeiture is quasi-criminal in nature, being a penalty for criminal activity, the exclusionary rule applies. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702 (1965). The general principles behind search and seizure warrants, the Fourth Amendment, and the exclusionary rule are well-known. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized." *Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003) (internal quotation and editorial marks and citations omitted). With respect

to warrantless automobile stops, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996) (citation omitted). "Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) (citations omitted). Seizure warrants require probable cause, established at the time of the application, that a particular item of property has a connection to criminal activity. *See Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1125 (2d Cir. 1993) (citations omitted).

Applying a probable-cause and suppression analysis to Fitch's motion will be difficult because of the way in which Fitch wrote his motion papers. At most, the Court can provide a generous reading of what little Fitch has submitted, owing to his *pro se* status. The Court's most generous possible reading of Fitch's motion papers has identified two events that Fitch has mentioned that potentially implicate the Fourth Amendment for purposes of this case: a state search warrant supposedly executed on November 2, 2013 at his residence in Middleport, New York; and the federal seizure warrant. For the sake of completeness, the Court will add a third event that is implied in Fitch's motion papers and that is directly relevant to this case, namely the initial traffic stop on February 23, 2013.

### B. Warrantless Stop

The traffic stop of Fitch, and the search and arrest that followed, fell into a sequence of events all supported by probable cause. The police officers in question directly observed Fitch

commit a traffic violation by driving through a stop sign and failing to signal in turn. The direct observation gave the officers probable cause to believe that one or more traffic infractions occurred. Upon approaching the Vehicle, the officers noted a strong smell of marijuana coming from within, giving them probable cause to search under the automobile exception. *Cf. United States v. Brock*, No. 13-CR-6025, 2016 WL 3743242, at *2 (W.D.N.Y. July 13, 2016) ("[A]s to the automobile exception, it is undisputed that the police, based upon the generalized smell of marijuana, had the right to search the defendant's vehicle and any containers within the vehicle where marijuana might be stored.") (citation omitted). Once the officers found the contraband in the Vehicle, they had probable cause to arrest Fitch and to search him incident to arrest. *See, e.g., United States v. Robinson*, 414 U.S. 218, 224 (1973). Additionally, Fitch's guilty plea operated as a waiver of any nonjurisdictional issues, including suppression issues, that he might have litigated up to the time of the plea. *See, e.g., United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (citations omitted); *Tate v. United States*, No. 3:07-CV-1522(RNC), 2009 WL 1011337, at *2 (D. Conn. Apr. 15, 2009) (citations omitted); *Corti v. Scully*, No. 86 CIV. 4527 (TPG), 1987 WL 5803, at *1 (S.D.N.Y. Jan. 14, 1987). Under these circumstances, the Court finds no basis to recommend suppression of any evidence obtained during Fitch's initial traffic stop and arrest.

### C. State Search Warrant

Fitch's statements about a state search warrant are difficult enough to understand because of the poor quality of the writing, but Fitch has made his situation more complicated by failing to develop the factual record. Fitch makes reference in his motion to a search warrant executed at a residence in Middleport, New York. Fitch, however, has not attached any such warrant to his

motion papers.3  The Court has searched the record and cannot find any copies of any state search warrant for a residence in Middleport.  Providing the Court with factual material is Fitch's responsibility, and from numerous documents that he has filed in the past, he knows how to do it.  There is thus no need to give Fitch any leniency in this regard.  *Cf., e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not 'consistent' with the *pro se* litigant's allegations, or arguments that the submissions themselves do not 'suggest'; that we should not excuse frivolous or vexatious filings by *pro se* litigants; and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law."); *Koehl v. Greene*, No. 9:06CV0478(LEK/GHL), 2007 WL 2846905, at *3 (N.D.N.Y. Sept. 26, 2007) (no special status needed for litigious *pro se* litigants because of their experience with filing).

The only state search warrant that the Court has found is one for a residence in the village of Barker, New York.  (First Case Dkt. 54-6 at 14–17, Second Case Dkt. 50-6 at 14–17.)  This warrant recited the events of February 23, 2013 and mentioned the federal seizure warrant.  On the basis of the contraband seized twice from Fitch, the warrant proposed that probable cause be found to believe that Fitch had additional contraband at his residence.  The inference about the residence was reasonable under the circumstances.  *Cf., e.g., United States v. Mullen*, 451 F. Supp. 2d 509, 543 (W.D.N.Y. 2006) (search warrant for a business and vehicle supported by probable cause

---

3 The only information that the Court has about a residence in Middleport comes from a related case that plaintiff filed on April 22, 2016.  (Case No. 16-CV-318.)  The complaint for that case refers to a search warrant for a Middleport residence that state law enforcement agents executed on November 13, 2015.  (*Id.* Dkt. No. 1 at 4.)  The Court notes that the Middleport search warrant would have issued two years after the state search warrant discussed here and likely would have included even more factual development.

11

where "it was a reasonable and common sense inference to believe that as the conspiracy's leader, Mullen's business and auto, like Mullen's residence, would also contain such evidence"); *United States v. Moran*, 349 F. Supp. 2d 425, 469 (N.D.N.Y. 2005) (probable cause to search a person and residence based on travel, communications, and other indicia of criminal activity).  The recitation of Fitch's arrest and of the federal seizure warrant appears to be accurate, making any issues under *Franks v. Delaware*, 438 U.S. 154 (1978) highly unlikely.  Finally, from what the Court can glean from the record, the law enforcement agents who executed this state search warrant relied on its terms in good faith.  *See generally United States v. Leon*, 468 U.S. 897, 905 (1984).  Consequently, the Court finds no basis to recommend suppression of any evidence that might been obtained through the execution of the state search warrant.

      **D.  Federal Seizure Warrant**

Finally, the same reasons that support the state search warrant support the federal seizure warrant.  The federal seizure warrant concerned the same Vehicle that Lockport police officers directly observed with contraband stored in it.  Probable cause thus would have been stronger than the probable cause established for any residence where criminal activity had not been directly observed.  In any event, the good-faith exception would have covered the seizure warrant as well.  Fitch's argument in his motion about how he paid for the Vehicle is an evidentiary matter that he would be welcome to present at trial; it would not affect the probable cause established by the observations of the Lockport police officers.  The Court thus finds no basis to recommend suppression of any evidence stemming from the execution of the seizure warrant.

IV. **CONCLUSION**

For all of the foregoing reasons, the Court respectfully recommends denying Fitch's motion to suppress (First Case Dkt. No. 80; Second Case Dkt. No. 71).

V. **OBJECTIONS**

A copy of this Report and Recommendation will be sent to counsel for plaintiff by electronic filing on the date below. At the same time, a copy of this Report and Recommendation will be sent to Fitch by first-class mail at his address of record. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); FRCP 72. "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

___/s Hugh B. Scott___
Honorable Hugh B. Scott
United States Magistrate Judge

DATED: May 10, 2017